## GULF PIPE LINE CO. et al. v. SIMS.

No. 22983.    May 15, 1934.

James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole, and C. L. Billings, for plaintiffs in error.

C. A. Warren, B. P. Slade, Roy F. Ford, and S. J. Montgomery, for defendant in error.

WELCH, J. The determining question on appeal is whether the plaintiff must establish negligence as alleged in his petition, or whether he may recover damages for personal injury irrespective of negligence on the part of defendants, since the injury resulted from burning oil, which oil had escaped from the storage tank and lines of the defendants.

The facts are that plaintiff was burned and injured on the public highway adjacent to premises upon which were located a number of 55,000-barrel oil tanks belonging to the defendant Gypsy Oil Company, and oil pipe lines connected with said tanks belonging to the defendant Gulf Pipe Line Company. The injury occurred late at night.

Plaintiff alleges that, on or about December 8, 1930, defendants maintained and were using for storage of crude oil a number of tanks of large capacity, and in connection therewith had connected to said tanks a pipe line which was laid upon the surface of the ground and extending from said tanks to a pump station belonging to and operated by defendants located some two miles distant from said tank; that, on the night of December 8, 1930, plaintiff was riding as a passenger in an automobile driven by one Floyd Davis, going west along the public highway on the north side of the premises

upon which said tanks were located; that as the automobile approached a bridge over a small ravine, gas which had collected near and around the bridge was ignited and caused an explosion and fire by which plaintiff was severely burned; that, at some time prior thereto, the length of time not being known to plaintiff, crude oil had been escaping from one of said tanks in large quantities, and had run along the ravine and under said bridge and across the highway for a considerable distance beyond; that the gas which ignited and caused the explosion had been given off by the crude oil flowing from said tank; that the crude oil accumulated in the ravine, caught fire, and by reason thereof plaintiff was severely burned; that in said pipe line near one of said tanks, the gate or valve was open and the pipe line was disconnected, thus permitting the oil to escape and flow over the surface of the ground.

The petition then sets forth with considerable particularity the tendency of crude oil, such as that escaping from the tanks, to give off and discharge natural gas of a highly inflammable nature, all of which it is alleged was well known to the defendants. The petition further alleges that defendants were guilty of negligence directly and approximately causing the plaintiff's injury, as follows:

"* * * In that defendants negligently and carelessly permitted crude oil to escape from said pipe line and to flow across the surface of the ground and negligently and carelessly permitted said pipe line to leak and break, well knowing that crude oil therein would escape and flow out onto the surface of the ground."

It is also alleged that defendants were guilty of negligence in failing to keep the pipe line in repair, and in failing and neglecting to use good and sufficient material in the construction of the pipe line, and in failing to properly inspect said pipe line at reasonable intervals.

Defendants answered separately by general denials. The Gypsy Oil Company admitted that it had erected the oil tanks on the premises and owned and controlled same, and that the defendant Gulf Pipe Line Company had no interest in or control over same, and specifically denied that it owned or had any interest in or control over the pipe line connected with the tanks; it alleged that the Gulf Pipe Line Company owned, operated, and controlled a pipe line for the transportation of crude oil, a part of which was on said premises, and that said pipe line was connected with one of the tanks at or near an eight-inch gate valve at the tank; that the eight-inch gate valve and the pipe leading from it to the tank were owned and controlled by the Gypsy Oil Company; that there was a four-inch gate valve in the main pipe line owned and controlled by the Gulf Pipe Line Company a few feet beyond the eight-inch gate; that there was a by-pass around the eight-inch gate valve in which by-pass was a check valve through which oil could be pumped into the tank, but which automatically closed so as to present oil from flowing out through the by-pass. It then alleged, in substance, that, on December 8, 1930, and for sometime prior thereto, the eight-inch gate valve was closed and securely locked, and that the four-inch gate valve belonging to the defendant Gulf Pipe Line Company was closed so as to prevent oil from flowing into its lines in case, for any reason, the eight-inch gate valve should be open, and that the pipe line was properly connected and in good condition. It then alleges:

"That sometime during the afternoon or evening of December 8, 1930, the exact time being to this defendant unknown, some person or persons unknown to this defendant and unauthorized so to do, and without this defendant's knowledge and consent, sprung the lock on the 8-inch gate by twisting the chain to which said lock was attached, or by some other method, and opened said gate so as to permit oil to come through said gate from the tank to which said gate was connected and at or about the same time said person or persons unknown to this defendant and without its authority or consent, and, without the authority or consent of its codefendant, Gulf Pipe Line Company of Oklahoma, so as to permit oil to escape into said line and that at or about the same time, the exact time unknown to this defendant, said person or persons, unknown to this defendant and to its codefendant, Gulf Pipe Line Company of Oklahoma, and without their authority or the authority of either of them, disconnected the pipe line of the said Gulf Pipe Line Company of Oklahoma, by removing bolts and nuts therefrom, thereby permitting oil in said pipe line to escape therefrom over and upon the premises hereinabove described. That all of the acts hereinabove alleged were done without the knowledge, consent, or authority of this defendant or either of the defendants hereto. That prior to the time its gate was opened, and the gate of its codefendant, Gulf Pipe Line Company of Oklahoma, was opened, and the pipe line of its codefendant, Gulf Pipe Line Company of Oklahoma, disconnected, all oil in its tanks and in said pipe lines was secure and if its gate had not

been opened or the gate of the Gulf Pipe Line Company of Oklahoma been opened, or the pipe line of the Gulf Pipe Line Company of Oklahoma disconnected as herein, no oil would have escaped upon the premises."

The separate answer of the defendant Gulf Pipe Line Company pleaded substantially the same defense.

Plaintiff replied by general denial.

The cause was tried to a jury, resulting in a verdict and judgment against both defendants.

The evidence of plaintiff, in substance, shows. the explosion and his injury, and that on the night he was injured crude oil was escaping from one of the storage tanks owned by defendant Gypsy Oil Company, and had been running out from the pipe line of defendant Gulf Pipe Line Company, for such length of time that it had run down and into the ravine under the bridge across the highway and beyond for a total distance of about three-fourths of a mile; that the explosion and fire occurred shortly before 12 o'clock midnight. That immediately after the fire was discovered, the eight-inch gate valve belonging to the Gypsy Oil Company was open, and that the four-inch valve belonging to the Gulf Pipe Line Company was also open, and that the pipe line had ·been disconnected at a joint or connection known as a flange connection about 120 feet from the tank, and that the pipe line was on the surface of the ground from the tank to a point beyond where the line was found to be disconnected. No attempt was made by plaintiff to substantiate his allegation of negligence as to the construction of the pipe line, or the use of inferior material therein. The record discloses evidence and circumstances presented ·which tended to show or indicate negligence on the part of the defendants in connection with the manner of the escape of the oil and the apparent length ́of time it had been escaping.

Defendants, after unsuccessful demurrer to plaintiff's evidence, presented evidence tending to establish the allegations of its answer, namely, that there was no negligence, and that some criminal or miscreant had gone on the premises, forced the lock on the · eight-inch gate valve, opened the four-inch valve, and disconnected the pipe line.

There was some evidence tending to show that the valves had been opened some ten or twelve days before the fire, when the tank in question had been filled by pumping oil into same from the pipe line of the Magnolia Oil ·Company, and that in so doing the line leading into the Gulf Pipe Line Company line had been disconnected at a flange joint similar to, if not the same one that was found disconnected after the fire. There was evidence to the contrary. ̦

Defendant produced a number of witnesses who testified positively that all the valves had been securely closed and the eight-inch gate valve securely locked, and that the pipe line had been reconnected immediately after the tank had been filled, and that same had been inspected between the time the tank was filled and the date of the fire, and when the same were inspected were found to be securely closed and locked. There was also evidence tending to show that immediately after the lines and valves had been repaired after the fire, the oil was run out of the tank through the Gulf Pipe Line Company's line.

At the close of all the evidence defendants separately renewed their demurrer and moved for instructed verdicts. The demurrer and motions being overruled, certain instructions were offered by the defendants, most of which were refused.

There are 38 assignments of error. The first two assignments are not presented in the brief and will be treated as abandoned. The other 36 assignments are presented under five separate propositions, but, as we view the record, there is but one question involved that requires consideration. This question arises on the first part of instruction No. 5, given by the court. The entire instruction reads:

"You are instructed that if you find by a preponderance of the evidence in this case that oil of the Gypsy Oil Company escaped ̀through the pipe line of the Gulf Pipe Line Company of Oklahoma and ran down the ravine so as to collect under or near the bridge and that an explosion and fire occurred and plaintiff herein was injured as a proximate result thereof, then your verdict should be for the plaintiff in such sums as you find will compensate him for the injuries sustained, unless you further find by a preponderance of the evidence that the gates connecting the pipe line leading from the tank where the oil of the Gypsy Oil Company was stored, were opened and the pipe line of the Gulf Pipe Line was disconnected, and the oil permitted to escape therefrom, by some person or persons unauthorized by the agents, servants, and employees of the said Gypsy Oil Company and its codefendant, Gulf Pipe Line Company, and that the said unauthorized

interference and tampering with the property of the defendants was beyond the control of the defendants and could not have been prevented by the exercise of that ordinary care commensurate with the nature of the enterprise in which the defendants were engaged, in which event your verdict should be for the defendants."

It will be observed that the court in this instruction did not tell the jury that it would be necessary to find from the evidence that the defendants, or either of them, were guilty of negligence in permitting the oil to escape before they could find for plaintiff, nor did the court so instruct in any other instruction.

It is contended in behalf of the plaintiff, Grady Sims, that the defendants are liable for damages irrespective of negligence, since the defendants stored crude oil in large quantities, and since crude oil is a substance which, if it escapes from the tanks or other structures in which it is stored, is likely to do damage to others. And that if crude oil does escape and does result in damage, as in this case by personal injury, the defendant must respond in damages.

Upon the other hand, it is contended by the defendants that they were engaged in a lawful business and in the lawful use of their property, and in the storage of their crude oil on their own premises in a manner recognized as the lawful, proper, and diligent method of the necessary storage of crude oil; that they used all due care in the maintenance of their tanks and pipe lines, and made diligent inspection thereof, and were not guilty of any negligence, and in the absence of negligence were not liable, and that the plaintiff's action was founded upon his allegation of negligence, upon his failure to substantiate his allegation of negligence, there was no liability of the defendants.

There is showing in the record that the four storage tanks of the defendants upon the tank farm, and the particular storage tank in question here, were of proper construction and were constructed of good and substantial steel covered with a gas-tight roof. There is also record showing to the effect that all pipe lines and connections were of standard construction and location, and of serviceable and proper material, and that the maintenance of the lines and tanks was diligently proper. There was also contention to the contrary. There was no production of oil from the premises on the tank farm, but the adjacent territory was a part of the extensive Seminole county oil development, and was developed to the highest state of production of oil and gas. Evidence was also offered to show that the maintenance of these oil storage tanks was necessary in a business like conducting and management of the business of the defendants. The defendant Gypsy Oil Company is engaged in the business of producing oil and gas, the purchase and selling of oil, and has been so engaged in Oklahoma since 1907. The defendant Gulf Pipe Line Company is a common carrier of oil for hire, and has been engaged in this business in Oklahoma since 1908 or 1909. Both defendants have been engaged in business in Seminole county, Okla., since 1926.

The plaintiff states his contention to be as follows:

That "the defendants were not entitled to make the defense in this case that some person or persons, either employees or third persons, without authority from the defendants, opened the connections on the tank and broke the pipe line open and permitted the oil to escape, because the oil either belonged to the defendants or it was under their control, and it was their duty, under all circumstances, and at all events not to permit it to escape and run upon and over the highway, thus endangering the lives of the general public, including the plaintiff."

And in support of his claim and right to recover, irrespective of negligence, the plaintiff quotes from Rylands v. Fletcher, 1 E. R. C. 236, L. R. 3 H. L. 330, 37 L. J. Ex. 161, 179 L. T. (N. S.) 220, and contends for the following rule, and for its application to this case.

"Under the common law where one, who for his own purposes, brings upon his land and collects and keeps there anything which is likely to do mischief if it escapes, must keep it in at his peril, and if he does not do so is prima facie answerable for all the damage which is the natural consequence of its escape, although he may excuse himself by showing that the escape was due to plaintiff's default or was the consequence of an act of God or vis major."

In the instant case it is not contended by the defendants that the plaintiff's damage was due to any default on the part of the plaintiff, or was the consequence of the act of God or vis major. So that this statement of plaintiff's contention squarely presents the question whether the plaintiff is entitled to recover, irrespective of any showing of negligence on the part of the defendant.

The case of Rylands v. Fletcher, supra, was decided by the Court of Exchequer Chamber of England, May 14, 1866, and was affirmed shortly thereafter by the House of

Lords. This decision was based upon the rule contended for by the plaintiff. The rule in Rylands v. Fletcher may be said to be a survival of the doctrines of the medieval law as to damages in civil cases by which a person was made responsible for all damages in any manner caused by him or resulting from his acts, or in any manner resulting from any force put in motion by him or put in motion by his management or arrangement on his property, irrespective of negligence, and whether damage had been inflicted intentionally or accidentally. That rule was stated by Sir William Holdsworth in his history of English Law, vol. 8, p. 446, as follows:

"During the medieval period the principle which underlay the law as to civil liability can be stated somewhat° as follows: A man is liable for all the harm which he has inflicted upon another by his acts, if what he has done comes within some one of the forms of action provided by law, whether that harm has been inflicted intentionally, negligently, or accidentally. A man acts at his peril. This absolute liability for damage caused by an act which comes within one of the forms of action, even though the damage is the result of pure accident, was restated by Bacon at the end of the sixteenth century; and it was used by Hale in the seventeenth century to point the contrast between criminal and civil liability."

In Rylands v. Fletcher, supra, the facts were, in substance, that the defendant, in the trial court, had constructed a large reservoir and impounded water in large quantities on his premises, but he so constructed the reservoir as to turn the impounded water into certain ancient abandoned mine workings or shafts running under the location of the reservoir, or permitted the water from his reservoir to enter and flow into such abandoned mine workings or shafts. The water in large volume flowed through such ancient mine workings or shafts, and thence into the mine workings and tunnels of the plaintiff, which were in operation on his own land, flooding the plaintiff's coal mine workings, greatly damaging the plaintiff's property then being operated. We think that case is not in point here upon the facts. And we conclude that the rule there announced, and here contended for the plaintiff, Sims, cannot be sustained in this jurisdiction in this character of action, and that our conclusion that it should not be followed is justified both by the trend of modern decisions, and by modern economic and industrial developments.

The business engaged in by the defendants, that of transportation and storage of crude oil, is one of the basic industries of the state; that business is not only legal, necessary, and proper, but has an outstanding part in the development of the natural resources of the state. When that business is conducted in the recognized manner, with all diligence, with the use of standard equipment, materials and appliances, and without negligence, then the persons engaged in such business should not, under the rule in Rylands v. Fletcher, be held to be insurers that in no event would it be possible that damage or injury could result from such operation. The plaintiff in the instant case alleged negligence and bases his action thereon. At the conclusion of all the evidence, the cause should have been submitted to the jury upon the issue of negligence. If the defendants were guilty of negligence, they should respond in damages for the harm proximately resulting therefrom, and would be required by law to do so.

The court's instruction to the jury, as above quoted, based upon the rule° of liability, irrespective of negligence, in this case, was erroneous and requires a reversal of the judgment.

Since the judgment must be reversed and the cause remanded, we do not further discuss the details of the evidence.

The defendants in this case, of course, should be held to the proper degree of care consistent with their duties of diligence (20 R. C. L. 51), but when that rule is observed, no hardship will result from the requiring of those who allege negligence to prove negligence.

At the conclusion of all of the evidence in this case, it was the duty of the court to instruct the jury upon all the issues of the case. One of those issues was whether or not the defendants were guilty of negligence. There was evidence tending to show negligence and there was evidence to the contrary. This presented an issue of fact to be determined by the jury. The erroneous instruction that the verdict should be for the plaintiff, irrespective of negligence, amounted virtually to an instruction for the plaintiff. It did not properly submit the issues to the jury.

The judgment must be reversed, and the cause remanded, with directions to grant the defendants a new trial. It is so ordered.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, and BAYLESS. JJ., concur. RILEY, C. J., dissents. BUSBY, J., absent.